UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN GARNER, et al.,<br>　　　　Plaintiffs,<br>　v.<br>PHOENIX AIR GROUP, INC.,<br>　　　　Defendant. | Case No. 24-cv-07720-AGT<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 12 |

　　　　Under a contract with the U.S. Department of the Interior, Phoenix Air Group, Inc., provided the U.S. Navy with several aircraft and flight crews for naval training exercises. In 2023, one of those planes crashed off the coast of California, killing all three crew members. The plane departed from Point Mugu Naval Air Station, near Oxnard, California, and was supposed to return there. Instead, the plane crashed at sea after a fire erupted. The crash occurred during training exercises that were designed "to sharpen the defensive capabilities of United States naval vessels." Compl. ¶ 14. The exercises were "conducted entirely over the navigable waters of the Pacific Ocean" and within California territorial limits. *Id.*

　　　　The flight crew's families are suing Phoenix Air for wrongful death and survival damages, under general maritime law. Phoenix Air has moved to dismiss, arguing that

admiralty jurisdiction doesn't apply and that state workers' compensation laws provide the only remedy. Below, the Court considers the two questions presented. Does admiralty jurisdiction apply? And even if it does, do state workers' compensation laws displace admiralty law and provide plaintiffs' exclusive remedy?[1]

## I.

Admiralty jurisdiction applies to airplane crashes when:

(1) the crash occurs in navigable waters;

(2) the crash could have disrupted maritime commerce; and

(3) the flight bears a substantial relationship to traditional maritime activity.

*See U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1139 (10th Cir. 2009); *see also In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009) (applying the same three-part test to other maritime torts).

For purposes of its motion to dismiss, Phoenix Air concedes that the first two prongs are satisfied. Its motion turns on prong three. There wasn't a substantial relationship between the flight in question and traditional maritime activity, Phoenix Air argues, because the flight began at Point Mugu Naval Air Station and was supposed to return there without stopping. It was "a land-based plane flying from one point in the continental United States to another," with only a "fortuitous[] and incidental[] connect[ion] to navigable waters." *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 272–73 (1972).

Phoenix Air relies heavily on *Executive Jet*, 409 U.S. 249, but the facts of that case are materially distinguishable. In *Executive Jet*, a charter plane "struck a flock of seagulls as

---

[1] The Court grants Phoenix Air's request for judicial notice of the National Transportation Safety Board's preliminary accident report, which is referenced in plaintiffs' complaint and is a matter of public record. *See* Dkt. 12-1, RJN, Ex. 1; Compl. ¶ 19.

it was taking off" in Cleveland, Ohio, en route to Portland, Maine, and "sank in the navigable waters of Lake Erie, a short distance from the airport." *Id.* at 250. The flight "would have been almost entirely over land" and bore "no relationship to traditional maritime activity." *Id.* at 272–73. The crash was "only fortuitously and incidentally connected to navigable waters." *Id.* at 273. Admiralty jurisdiction thus didn't apply.

Here, unlike *Executive Jet*, the crash that killed plaintiffs' decedents wasn't fortuitously connected to navigable waters. Phoenix Air's aircraft crashed during naval training exercises "conducted entirely over the navigable waters of the Pacific Ocean." Compl. ¶ 14. Given the location of the exercises, a crash in navigable waters was entirely predictable.

Also unlike *Executive Jet*, Phoenix Air's flight related "to traditional maritime activity." 409 U.S. at 273. On this point, *T.J. Falgout Boats, Inc. v. United States*, 508 F.2d 855 (9th Cir. 1974), is instructive. The Ninth Circuit held there that a Navy jet's "activity over water," which included firing a missile at a ship and crashing into the ocean, "bore a significant relationship to traditional maritime activity." *Id.* at 857–58. The court emphasized that "the subject aircraft [was] by its very nature maritime." *Id.* at 857. The jet was serving the Navy, and the Navy is intrinsically engaged in traditional maritime activity.

> The United States Navy exists, in major part, for the purpose of operating vessels and aircraft in, on, and over navigable waters. Its aviation branch is fully integrated with the naval service and, whether land-based or sea-based, functions essentially to serve in sea operations.

*Id.*

Here, too, the aircraft served the U.S. Navy's sea operations. Phoenix Air's airplane crashed while participating in training exercises "designed . . . to sharpen the defensive capabilities of United States naval vessels." Compl. ¶ 14. Designated as it was for naval activity, "the subject aircraft [was] by its very nature maritime." *T.J. Falgout*, 508 F.2d at 857.

3

Phoenix Air attempts to distinguish *T.J. Falgout* on the basis that the Ninth Circuit also observed that the Navy jet's activity—"firing . . . explosive projectiles" at sea—used to be performed "by waterborne vessels" before "the birth of aviation." *Id.* The court viewed this pre-aviation history as another reason why the jet's activity "bore a significant relationship to traditional maritime activity." *Id.* at 858. Phoenix Air insists that the same pre-aviation test weighs against admiralty here. "Without the advent of aviation," the company says, "there would be no need for Navy vessels to sharpen their defensive capabilities as to airborne threats." Reply, Dkt. 36 at 5 (citation modified).

*T.J. Falgout* didn't hold that an aircraft's activities can only be categorized as traditionally maritime if they would have been performed by waterborne vessels before the advent of aviation. Irrespective of pre-aviation history, *T.J. Falgout* emphasized that naval aircraft are "fully integrated with the naval service" and maritime by nature. 508 F.2d at 857.

Even so, the pre-aviation test, if applied, doesn't clearly favor Phoenix Air. When courts evaluate whether conduct bears "a substantial relationship to a traditional maritime activity," they consider the conduct's "general character," not "the particular circumstances of the incident." *Sisson v. Ruby*, 497 U.S. 358, 364–65 (1990). Here, the general character of Phoenix Air's conduct was that the company's aircraft supported the Navy's efforts "to sharpen [its vessels'] defensive capabilities." Compl. ¶ 14. Before aviation, a similar supportive role presumably would have been played by other vessels, simulating enemy ships.

At a minimum, the pre-aviation test doesn't clearly weigh against a finding that Phoenix Air's aircraft was engaged in traditional maritime activity. And more importantly, because the aircraft was assisting the Navy with naval training exercises, "the subject aircraft [was] by its very nature maritime." *T.J. Falgout*, 508 F.2d at 857.

Taking plaintiffs' allegations as true, *Fort v. Washington*, 41 F.4th 1141, 1144 (9th Cir. 2022), the Court concludes that admiralty jurisdiction applies. Plaintiffs' decedents died in a plane crash in navigable waters, which could have disrupted maritime commerce and which bore a substantial relationship to traditional maritime activity.

## II.

The Court has admiralty jurisdiction, but Phoenix Air argues that plaintiffs' claims—for wrongful death and survival damages under general maritime law—still fail. Plaintiffs' claims are barred by state workers' compensation laws, Phoenix Air maintains.

Phoenix Air is based in, and the decedents resided in, Georgia. Compl. ¶¶ 3, 11. Georgia's workers' compensation statute provides remedies for dependents of workers who die from accidents on the job. *See* Ga. Code Ann. § 34-9-265(b) (2015). These remedies, however, "exclude . . . all other rights and remedies . . . at common law or otherwise, on account of such injury, loss of service, or death." *Id.* § 34-9-11(a). Citing this exclusivity provision, Phoenix Air insists that plaintiffs cannot pursue their maritime claims.

When non-seamen die in state territorial waters, as happened here, general maritime law provides their survivors with the right to bring wrongful death and survival actions. *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 409 (1970); *Sutton v. Earles*, 26 F.3d 903, 914–15, 919 (9th Cir. 1994).[2]

States may supplement general maritime law, "a species of judge-made federal common law," *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206 (1996), but cannot "deprive a person of any substantial admiralty rights." *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406,

---

[2] Other sources of federal law provide for wrongful death claims for seamen, 46 U.S.C. § 30104(a); *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 428 (9th Cir. 1994), and workers killed "on the high seas," 46 U.S.C. § 30302; *Yamaha*, 516 U.S. at 212.

410 (1953); *see also American Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) ("A state court may adopt such remedies . . . as it sees fit so long as it does not attempt to make changes in the substantive maritime law.") (citation modified).

Based on *Pope*, the Supremacy Clause, or both, courts have held that exclusive-remedy provisions in state workers' compensation statutes cannot preclude non-seamen's survivors from pursuing general maritime claims for wrongful death. *See Purnell v. Norned Shipping B.V.*, 801 F.2d 152, 155–56 (3d Cir. 1986); *Thibodaux v. Atl. Richfield Co.*, 580 F.2d 841, 845–47 (5th Cir. 1978); *Flying Boat, Inc. v. Alberto*, 723 So. 2d 866, 868–69 (Fla. Dist. Ct. App. 1998); *In re Holoholo Litig.*, 557 F. Supp. 1024, 1027–29 (D. Haw. 1983).

In *Purnell*, 801 F.2d 152, for example, the Third Circuit held that general maritime law took precedence over Delaware's exclusive-remedy provision. "[F]ederal maritime law affords a federal remedy for wrongful deaths occasioned in state territorial waters," the court noted. *Id.* at 155. "Having recognized the existence of such a federal claim, we are constrained to hold that, under the supremacy clause, that claim cannot be preempted or impaired by state law." *Id.* at 156.

Similarly, in *Thibodaux*, 580 F.2d 841, the Fifth Circuit held that the widow of a non-seaman who drowned when his boat sank on the way to a worksite could pursue a wrongful death claim, despite Louisiana's exclusive-remedy provision. A state's "exclusive remedy provision . . . cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law," the court explained. *Id.* at 847.

The Ninth Circuit has not held otherwise. Phoenix Air, meanwhile, relies principally on *Brockington v. Certified Electric, Inc.*, 903 F.2d 1523 (11th Cir. 1990), where the court considered the comparative interests of general maritime law and Georgia's exclusive-

6

remedy provision and held, in a case in which an electrician hurt his back while traveling on a boat to a worksite, that the latter interest was greater. *See id.* at 1529–33. *Brockington*, however, only involved claims for personal injury. The court emphasized that if the plaintiff had sued for wrongful death, as here, general maritime law would control. *See id.* at 1531 (noting that "the Supreme Court specifically created a cause of action [for wrongful death] in general maritime law," and reasoning that a state law preventing such a claim "would intrude upon the uniformity of the general maritime law").

Even in cases factually analogous to *Brockington*, courts have declined to follow its balancing approach, reasoning that under the Supremacy Clause, a balancing test is inappropriate. *See, e.g.*, *Ranger v. Alamitos Bay Yacht Club*, 17 Cal. 5th 532, 547 (2025) ("Tensions between [federal and state law] are resolved . . . by the supremacy clause and preemption principles. . . . We therefore do not find *Brockington* . . . persuasive.") (citation modified); *Morrow v. Marinemax, Inc.*, 731 F. Supp. 2d 390, 399 (D.N.J. 2010) ("Plaintiff's general maritime negligence claim must be preserved, despite the exclusivity provision of the New Jersey Workmen's Compensation Act."); *Moore v. Capital Finishes, Inc.*, 699 F. Supp. 2d 772, 783 (E.D. Va. 2010) ("[T]his court cannot allow the Virginia Act to preclude plaintiff's federal maritime tort claim . . . .").

The Court agrees with these decisions. Under *Pope*, 346 U.S. 406, and the Supremacy Clause, state workers' compensation laws must yield to federal maritime law, assuming they conflict. In such circumstances, a balancing of competing interests isn't warranted.

Here, plaintiffs have a right to sue for wrongful death and survival damages under general maritime law. Georgia law cannot deprive them of that right.

### III.

Admiralty jurisdiction applies, and Georgia's workers' compensation laws don't displace general maritime law. Plaintiffs' claims—for wrongful death and survival damages under general maritime law—can proceed. Phoenix Air's motion to dismiss is denied.

An initial case management conference will be held on August 8, 2025. The parties must file a joint case management statement by August 1, 2025.

**IT IS SO ORDERED.**

Dated: July 16, 2025

Alex G. Tse
United States Magistrate Judge